**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

DONNA EVERHART, et al.,

      Plaintiffs,

v.                                       CV No. 17-1134 RB/CG

JOHN DOMINGUEZ, et al.,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

**THIS MATTER** is before the Court on Defendants New Mexico Children Youth and Family Services ("CYFD"), Dana Becker, and Evgenia Valderaz's *Motion for Summary Judgment and Memorandum in Support* (the "Motion"), (Doc. 144), filed January 21, 2020; Plaintiffs Donna Everhart and Harley Everhart's *Memorandum in Support of Denial of Motion for Summary Judgment by the Defendants* (the "Response"), (Doc. 146), filed February 10, 2020; and Defendants' *Reply in Support of Motion for Summary Judgment* (the "Reply"), (Doc. 152), filed February 28, 2020. This matter is also before the Court on Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), filed October 8, 2019; and Defendants' *Response to Plaintiffs' Motion For Issue Preclusion*, (Doc. 143), filed November 22, 2019.

On February 14, 2020, United States District Judge Robert C. Brack referred this matter to the undersigned to make findings of fact, conduct legal analysis, and recommend an ultimate disposition. (Doc. 147). After considering the parties' filings, the record, and the relevant law, the Court **RECOMMENDS** that Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), be **DENIED**, and Defendants' *Motion for Summary Judgment*

*and Memorandum in Support*, (Doc. 144), be **GRANTED**. As a result, the Court

**RECOMMENDS** that Defendants CYFD, Becker, and Valderaz be **DISMISSED** from

this action **WITH PREJUDICE**.

## I.    Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). A fact is "material" if it could have an effect on the outcome

of the lawsuit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014)

(citation omitted). A dispute over a material fact is "genuine" if the evidence presented

could allow a rational jury to find in favor of the non-moving party. *E.E.O.C. v.

Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000) (internal citation

omitted). To survive summary judgment, "[g]enuine factual issues must exist that 'can

be resolved only by a finder of fact because they may reasonably be resolved in favor of

either party.'" *Harapat v. Vigil*, 676 F. Supp. 2d 1250, 1258-59 (D.N.M. 2009) (quoting

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)).

In considering a summary judgment motion, a court views the facts in the light

most favorable to the non-moving party and draws all reasonable inferences in his or

her favor. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A party seeking

summary judgment bears the initial burden of showing there is no genuine dispute as to

any material fact. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).

When the movant does not have the burden of persuasion at trial, it can satisfy its

burden at the summary judgment stage by identifying a lack of evidence on an essential

element of the claim. *Id.* at 671. If the party seeking summary judgment satisfies its burden, the burden then shifts to the non-movant. *Id.*

The non-movant cannot rest on the pleadings but must "designate specific facts so as to make a showing sufficient to establish the existence of an element essential to that party's case in order to survive summary judgment." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (citation omitted). Specifically, the non-movant must identify facts from which a rational trier of fact could find in the non-movant's favor, utilizing evidence such as affidavits, deposition transcripts, or incorporated exhibits. *Adler*, 144 F.3d at 671. The party cannot rest on ignorance of the facts, speculation, or unsubstantiated conclusory allegations. *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003).

In addition, "[t]he mere existence of a scintilla of evidence will not avoid summary judgment." *Harapat*, 676 F. Supp. 2d at 1259 (citing *Vitkus v. Beatrice Co.*, 11 F.3d 1535, 1539 (10th Cir. 1993)). If the evidence in favor of the nonmovant "is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." *Id.* (quoting *Anderson*, 477 U.S. at 249). "A fact is 'disputed' in a summary-judgment proceeding only if there is contrary evidence or other sufficient reason to disbelieve it; a simple denial, much less an assertion of ignorance, does not suffice." *Grynberg v. Total S.A.*, 538 F.3d 1336, 1345 (10th Cir. 2008) (citing Fed. R. Civ. P. 56(e)).

## II.   Introduction

In Defendants' Motion, they provide an enumerated list of undisputed material facts, which they support with citations to the following: Plaintiffs' Second Amended Complaint, (Doc. 109); the New Mexico Court of Appeals' 2017 opinion, *State ex rel.*

*Children, Youth & Families Dep't v. Donna E.*, 2017-NMCA-088, 406 P.3d 1033

("*Donna E. I*" decision); the Fifth Judicial District Court's August 2018 Findings of Fact

and Conclusions of Law ("District Court's 2018 Findings and Conclusions"), (Doc. 144-

1); and the New Mexico Court of Appeals' 2019 opinion, *State ex rel. Children, Youth &*

*Families Dep't v. Donna E.*, No. A-1-CA-37727, ("*Donna E. II*" decision), filed December

27, 2019.[1] (Doc. 144 at 2-12). Plaintiffs' Response fails to individually address

Defendants' enumerated facts as disputed or undisputed, as required by the Local

Rules of Civil Procedure. (Doc. 146 at 1-3); *see* D.N.M.LR-Civ. 56.1(b) ("Each fact in

dispute must be numbered, must refer with particularity to those portions of the record

upon which the non-movant relies, and must state the number of the movant's fact that

is disputed."). Instead, Plaintiffs argue the Court should adopt the facts as provided in

Plaintiffs' *Motion for Issue Preclusion*, (Doc. 132), the Fifth Judicial District Court's July

2015 Findings and Conclusions, (Doc. 146-1), and the Court of Appeals' 2017 opinion,

*Donna E. I.* (Doc. 146 at 1-2).

Plaintiffs' request that the Court adopt the facts as articulated in their *Motion For*

*Issue Preclusion* is unavailing. Plaintiffs fail to provide any record citations or authority in

support of their factual recitation in their *Motion For Issue Preclusion. See* (Doc. 132);

D.N.M.LR-Civ. 56.1(b) ("The facts must be numbered and *must refer with particularity to*

*those portions of the record upon which the movant relies.*") (emphasis added).

Plaintiffs' error in not citing to the record in support of their factual contentions, coupled

with their failure to specifically controvert Defendants' enumerated facts, creates an

---

1.      Available online: https://www.nmcourts.gov/Court-of-Appeals
/memorandum-opinions.aspx, (last accessed March 6, 2020).

arguable impasse.

Ordinarily, when a non-movant fails to specifically controvert the moving party's facts in a summary judgment motion, "[a]ll material facts set forth in the Memorandum will be deemed undisputed...." D.N.M.LR-Civ. 56(1)(b). As a result, the Court is left to rely solely on Defendants' recitation of the facts. However, because both Plaintiffs and Defendants cite extensively, and thus appear to rely on, the Court of Appeals' 2017 decision, *Donna E. I*, and the District Court's 2015 Findings and Conclusions, the Court will supplement Defendants' facts with these additional authorities. The Court finds this supplementation balances the otherwise extreme injustice to Plaintiffs, while still honoring Defendants' uncontroverted facts. *See* D.N.M.LR-Civ. 1.7 ("These rules may be waived by a Judge to avoid injustice.").

## III.    Undisputed Material Facts

This case arises out of ten years of litigation between the Everharts and CYFD over the custody of Mr. and Mrs. Everhart's two youngest children, S.E. Boy and S.E. Girl. In April 2010, S.E. Boy, a first grader at the time, told his father, Harley Everhart, and school principal, Gail Bryant, that his eighteen year old brother, Harley Jr., had raped him. *Donna E. I*, 2017-NMCA-088, ¶ 7. Several months before this disclosure, Ms. Bryant discussed S.E. Boy's sexually inappropriate behavior at school with his mother, Donna Everhart. *Id.* Mrs. Everhart admitted that she knew Harley Jr. and S.E. Boy watched pornography together when she and Mr. Everhart were away. *Id.* However, Mrs. Everhart was not receptive to Ms. Bryant's recommendations about how to stop the children's inappropriate activities. *Id.*

With a credible accusation of rape, Ms. Bryant informed CYFD and the Hobbs

Police Department. *Id.* ¶ 8. The police interviewed Harley Jr., and he confessed to having penetrated S.E. Boy on two occasions a year and half prior. *Id.* Mr. Everhart denied knowing about the abuse. *Id.* The police informed Mr. and Mrs. Everhart that Harley Jr. could not have access to S.E. Girl and S.E. Boy. *Id.* A few weeks later, S.E. Boy attended a Sexual Assault Nurse Examination ("SANE") in which S.E. Boy stated, "we have taken pictures" of his "private parts" and "we print them upstairs." *Id.* ¶ 9. Additionally, during the examination S.E. Boy began masturbating, and after Mrs. Everhart asked him to stop, the examiner reported that Mrs. Everhart remarked, "isn't he hung." *Id.* ¶ 9. Mrs. Everhart denies making these remarks. *See* District Court's 2018 Findings and Conclusions (Doc. 144-1 at 7-8).

As a result of S.E. Boy's disclosures during the SANE examination, the Hobbs Police Department obtained a search warrant for the Everharts' electronic devices. *Id.* ¶ 10. When police arrived at the Everharts' home, Harley Jr. answered the door; S.E. Girl and S.E. Boy were also at home. *Id.* Because Mr. and Mrs. Everhart failed to prevent Harley Jr. from having access to S.E. Boy and two-year-old S.E. Girl, the children were placed in CYFD's custody. District Court's 2015 Findings and Conclusions, ¶¶ 30-33. On June 15, 2010, CYFD filed an abuse and neglect petition against Mr. and Mrs. Everhart. *Donna E. I,* 2017-NMCA-088 ¶ 11. In August 2010, the Everharts entered pleas of no contest with respect to all allegations in the petition. *Id.* As part of their pleas, Mr. and Mrs. Everhart agreed to comply with a proposed disposition and treatment plan provided by CYFD. *Id.*

After S.E. Boy and S.E. Girl were placed in CYFD custody, a series of judicial review hearings were held in 2010 and 2011 to assess Mr. and Mrs. Everhart's progress

on their treatment plans. *Id.* ¶¶ 12-20. At these hearings, the court found that Mr. and Mrs. Everhart had made insufficient effort and progress to comply with their treatment plans. *Id.* ¶¶ 13-14. In February 2011, the court ordered S.E. Boy placed in a residential treatment facility because he required a higher level of care. *Id.* ¶ 14. Then, in May 2011, the court found Mr. and Mrs. Everhart had made "substantial progress" in their treatment plans and reunification with S.E. Girl was in her best interest. *Id.* ¶ 15. However, visits with S.E. Boy were suspended due to Mr. and Mrs. Everhart's behavior during the visits. *Id.*

In June 2011, S.E. Girl began transitioning home with unsupervised overnight weekend visits. *Id.* ¶ 16. At the July 2011 permanency hearing, a Hobbs Police detective informed the court that images found on the Everharts' computer were possibly child pornography. *Id.* ¶ 17. After hearing testimony from the detective, Mr. Everhart, and a program director from the facility providing care to S.E. Boy, the court ordered all contact between Mr. and Mrs. Everhart and S.E. Girl and S.E. Boy be ceased. *Id.* At the next August 2011 hearing, the court found Mr. and Mrs. Everhart had made sufficient effort to participate in their treatment plans but continued to be unaware of the role they played in the harm that led to the decision to place S.E. Boy and S.E. Girl into CYFD custody. *Id.* ¶ 18. The court therefore continued the no-contact order. *Id.*

In September 2011, CYFD filed a motion for termination of parental rights indicating Mr. and Mrs. Everhart had made insufficient progress to allow their children to be safely returned. *Id.* ¶ 20. Specifically, CYFD cited the Everharts' refusal to acknowledge their responsibility to protect their children and their failure to do so. *Id.* According to CYFD, due to the Everharts' lack of supervision, S.E. Boy suffered sexual

abuse and attempted to molest S.E. Girl. *Id.* CYFD also expressed concerns about possible child pornography on the Everharts' computer. *Id.* Mrs. Everhart filed a counterpetition arguing she had complied with all of CYFD's requirements and court orders and requested contact and visitation with S.E. Boy and S.E. Girl. *Id.*

The termination hearing was set for January 2012. *Id.* ¶ 21. However, CYFD moved to continue the hearing because of a training scheduled the same date. *Id.* The termination hearing was then reset for July 2012. *Id.* In the interim, the district court continued to hold permanency hearings. *Id.* ¶¶ 22-24. Specifically, in March 2012, the court ordered that the permanency plan would continue to be adoption, CYFD's legal custody would extend for an additional year, and the no-contact order would remain in effect. *Id.* ¶ 22.

Then, in June 2012, the Everharts filed a motion for summary judgment, seeking to set aside the motion for termination and the no-contact order. *Id.* ¶ 24. In their motion, the Everharts highlighted the Hobbs Police Department could not find "clear and convincing evidence" that the images on their home computer were child pornography. *Id.* Because the no-contact order and termination were predicated on the presence of child pornography, the Everharts alleged that both should be set aside. *Id.* It took CYFD thirty-three months to respond to the Everharts' motion for summary judgment. *Id.* ¶ 25.

In July 2012, the termination hearing was again continued at the request of CYFD because a key witness had experienced a "medical emergency." *Id.* ¶ 26. Instead, the district court used the allotted time to determine the Everharts' visitation rights. *Id.* The court heard from the Everharts' therapists, a program director at the visitation center who observed some visits between Mr. and Mrs. Everhart and S.E. Girl,

Mr. Everhart, a therapist who treated both S.E. Boy and S.E. Girl, and two providers from the residential treatment center where S.E. Boy had been residing. *Id.* Considering the testimony of these witnesses, the court continued the no-contact order. *Id.*

In September 2012, the termination hearing was again continued because the same key CYFD witness was unavailable. *Id.* ¶ 26, n.2. Then, at a status conference in February 2013, CYFD changed the permanency plan to reunification. *Id.* ¶ 27. The district court appointed a mediator—Ted Woodridge—to oversee reunification. *Id.* Mr. Woodridge was tasked with controlling family therapy timing and duration, parent-child visitation, contact with providers and services recommendations. *Id.* The court continued legal custody with CYFD for another year. *Id.*

In June 2013, the Everharts filed a motion arguing CYFD had not made a good faith effort towards reunification and the delay was causing emotional damage to the parent-child relationship. *Id.* ¶ 28. In August 2013, the court was scheduled to hear the Everharts' motion but continued the hearing for sixty days in order to allow more time for therapists to meet with the parties. *Id.* ¶ 29. The court held hearings in November 2013 and December 2013. *Id.* ¶¶ 29-30. In December 2013, the court changed course and found that adoption was now appropriate. *Id.* Specifically, the court held that while the Everharts had "complied with recommendations of the treatment plan…[the] causes and conditions of neglect and abuse maybe still exist, moreover, given the amount of time …[the] children [had] remained in custody, and the testimony given at [the December 2013] hearing, a change of plan to termination…appear[ed] to be in the best interest of…[the] children." *Id.* ¶ 30.

Between December 2013 and December 2014, the case was reassigned to four

different judges, during which time it appears no hearings were held. *Id.* ¶ 31; (Doc. 143-1, State Court Docket Sheet, at 17-18); District Court's 2015 Findings and Conclusions, ¶ ¶ 121-124. In January 2015, a permanency hearing was held and CYFD filed an amended motion for termination of parental rights. *Donna E. I*, 2017-NMCA-088, ¶ 32. In their motion to terminate parental rights, CYFD argued the Everharts' children were abused and neglected and the conditions and causes of the abuse were unlikely to change in the foreseeable future, despite reasonable efforts by CYFD. *Id.* Specifically, CYFD alleged the Everharts failed to protect their children and failed to provide adequate supervision. *Id.* In their countermotion, the Everharts requested reunification with S.E. Girl and S.E. Boy, subject to physical custody of S.E. Boy for services until he was ready to be released. *Id.* ¶ 33.

At the termination of parental rights hearing, held in March 2015, fourteen witnesses testified, spanning the course of three days. *Id.* ¶ 34. The witnesses consisted of treatment providers for Mr. and Mrs. Everhart and both children, including psychologists, therapists and counselors. *Id.* Other witnesses included an expert witness, Mr. Everhart, S.E. Girl's foster mother, a detective from the Hobbs Police Department, and a CYFD social worker—Defendant Becker. *Id.* ¶ ¶ 34, 44. At the hearing, Defendant Becker testified that although she thought Plaintiffs had followed their treatment plan, termination was nevertheless appropriate. *Id.* ¶ 44. She indicated that S.E. Girl had bonded with her foster parents and wanted a "family, stability and a home." *Id.* Additionally, Defendant Becker testified that while she had no reason to disbelieve the Everharts' therapist, who testified that Mr. and Mrs. Everhart had met all of CYFD's requirements and made progress in their treatment goals, she was

concerned S.E. Boy could harm S.E. Girl. *Id.* Further, Defendant Becker believed that termination was in the best interest of S.E. Girl because of the disintegration of the parent-child relationship. *Id.* Defendant Becker admitted that she thought CYFD was partially at fault for the disintegration because of "how long everything took." *Id.* Defendant Becker blamed several people including herself for the delays, but she also noted the Everharts' culpability, including problems with their marriage, their minimization of S.E. Boy's issues and their role in creating his problems. *Id.*

In July 2015, the district court filed its Findings and Conclusions. *Id.* ¶¶ 45-49. In its order, the court found the Everharts had abused and neglected S.E. Girl and S.E. Boy. *Id.* ¶ 46. The court determined the Everharts' lack of contact with S.E. Boy was the result of their failure to follow straightforward visitation rules and the deleterious effects their visits had on his treatment. *Id.* While the court made several findings as to the Everharts' behavior and complicity in the harm inflicted on S.E. Boy, it also acknowledged the Everharts' participation in extensive therapy over the years. *Id.* ¶¶ 46-47. Additionally, the court highlighted that CYFD never informed the Everharts' therapists about the pornography-related disclosures, and the services offered to the Everharts did not address the concerns raised by S.E. Boy's disclosures. *Id.* ¶ 46.

In addition, the court entered a number of other findings "chastising CYFD for not fully and timely informing the court of [Mrs. Everhart's] statements and actions…[and S.E. Boy's] disclosures and behaviors." *Id.* The court also noted that CYFD "utterly failed to properly assess the cause and conditions that led to [the Everharts'] abuse of [S.E. Boy]," that CYFD "never, with the directness commanded by the circumstance of the case, required [the Everharts] to confront the conditions and causes of their abuse

of the [children], and work to resolve them." *Id.* ¶ 47. Ultimately, the district court terminated Mr. and Mrs. Everhart's parental rights to S.E. girl based on abandonment as defined by N.M.S.A. 1978 §32A-5-15(B)(3). *Id.* ¶ 49.

The Everharts appealed the District Court's 2015 Findings and Conclusions to the New Mexico Court of Appeals. *Donna E. I*, 2017-NMCA-088. In *Donne E. I*, the Court of Appeals reserved the order of termination on the basis of abandonment because the district court failed to enter any findings of fact or conclusions of law regarding the cause of the disintegration of Mr. and Mrs. Everhart's relationship with S.E. Girl, an essential element to termination by abandonment. *Id.* ¶ 51. In reaching this conclusion, the Court of Appeals found no evidence the Everharts "caused the delays that undoubtedly contributed to the disintegration of the parent-child relationship with [S.E. Girl]." *Id.* ¶ 59.

Instead, the Court of Appeals primarily faulted CYFD for disintegration of the relationship. *Id.* ¶¶ 58-59. The Court of Appeals noted the district court's 2012 no-contact order with S.E. Girl was continued despite the Hobbs police indicating that the images found on the Everharts' computer could not conclusively be identified as child pornography. *Id.* ¶ 60. Further, the Court of Appeals noted that the district court premised its continued non-visitation because a therapist testified that it would be confusing to S.E. Girl. *Id.* Additionally, the Court of Appeals noted that in 2013 the court appointed mediator, Mr. Woodridge, "completely failed to address visitation and contact" with S.E. Girl. *Id.* ¶ 61. Indeed, the Court of Appeals highlighted there was no evidence in the record that visitation with S.E. Girl was withheld because the Everharts acted improperly during visits. *Id.* ¶ 62.

The Court of Appeals was also troubled by CYFD's lack of clarity on what was required with respect to the Everharts' treatment therapy. *Id.* ¶ 64. Notwithstanding which party caused the disintegration of the parent-child relationship, the Court of Appeals remanded the case back to the Fifth Judicial District Court to determine custody of S.E. Girl based on her best interests. *Id.* ¶ 64. However, the Everharts continued to have parental rights over S.E. Boy, who could return home in the future. *Id.* ¶ 70.

During the pendency of the Court of Appeals' 2017 judgment, the district court continued to have periodic judicial review hearings and permanency hearings. *See* (Doc. 143-1, State Court Docket Sheet, at 23-29). After remand, these hearings continued, and in April 2018, the district court held a two-day hearing on custody of S.E. Girl based on her best interests. (Doc. 143-1, State Court Docket Sheet, at 32); (Doc. 144-1, District Court's 2018 Findings and Conclusions, at 1). In coming to its determination on the best interests of S.E. Girl, the district court elicited testimony, facts, and evidence demonstrating that "extraordinary circumstances" were present to rebut the presumption under New Mexico law that it was in a child's best interests to be raised by her biological parents. (Doc. 144-1 at 2-45). Specifically, the district court found there was clear and convincing evidence of the Everharts' "serious parental inadequacy," and S.E. Girl's contact with the Everharts had been so minimal that she had significantly bonded with her foster parents. *Id.* at 2-43. Given that both requirements of "extraordinary circumstance" had been shown with clear and convincing evidence, the court found it was in S.E. Girl's best interests to remain in CYFD's custody and in the placement of her current foster family. *Id.*

The Everharts appealed this judgment to the New Mexico Court of Appeals. *Donna E. II*, No. A-1-CA-37727, ¶ 1. The Everharts advanced several due process arguments, similar to those raised before this Court, challenging the District Court's 2018 Findings and Conclusions. *Id.* ¶ 4. In December 2019, the Court of Appeals rejected the Everharts' arguments and affirmed the district court's determination. *Id.* ¶ ¶ 4-21. The Everharts appealed the Court of Appeal's judgment to the New Mexico Supreme Court and are currently waiting for the New Mexico Supreme Court to grant a writ of certiorari, No. A-1-CA-37727. (Doc. 145 at 2); (Doc. 151-1).

IV.     **Analysis**

In Defendants' Motion, they assert five arguments in support of summary judgment. First, Defendants contend the Rooker-Feldman Doctrine bars Plaintiffs' claims. (Doc. 144 at 12-14). Second, Defendants argue Plaintiffs' claims should be dismissed based on issue and claim preclusion. *Id.* at 14-20. Third, Defendants assert that both Defendants Becker and Valderaz are entitled to summary judgment based on qualified immunity. *Id.* at 20-22. Fourth, Defendants argue Plaintiffs failed to establish a CYFD policy or custom that caused Plaintiffs' injuries, as required by 42 U.S.C. § 1983. *Id.* at 22-23. Lastly, Defendants allege Plaintiffs lack standing to bring any action on behalf of S.E. Boy or S.E. Girl. *Id.* at 23-24. The Court will address each of these arguments in turn. Additionally, because Plaintiffs similarly assert issue preclusion as a basis for summary judgment, the Court will also address their *Motion For Issue Preclusion*, (Doc. 132), below.

> a.     ***Defendants' Arguments for Application of the Rooker-Feldman Doctrine, Claim Preclusion, and Issue Preclusion***

Defendants first argue that Plaintiffs' claims should be barred by the Rocker-

Feldman-Doctrine, claim preclusion, and issue preclusion. (Doc. 144 at 12-20). In response, Plaintiffs contend "[t]he Rooker-Feldman doctrine is not applicable to the Plaintiffs' Amended Complaint because the State-Courts for the State of New Mexico did not adjudicate the Plaintiffs claims of a violation of due process, substantive due process, familial association, and illegal searches and seizures." (Doc. 146 at 8). Similarly, Plaintiffs allege the doctrines of claim and issue preclusion do not bar this litigation because "[t]he claims of Constitutional violations of due process, substantive due process, and familial relationships and searches and seizures were never raised and were specifically not addressed by the [New Mexico state courts]." *Id.* at 10.

When evaluating the preclusive effect of state court judgments, federal courts look to that state's law. *Lance v. Dennis*, 546 U.S. 459, 466 (2006). Therefore, the Court will look to New Mexico courts' treatment of preclusion, which is generally consistent with federal standards. *See Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57. Each of these doctrines mandate that the underlying state litigation result in a final judgment before application of the doctrine. *See Tast v. Dean*, 182 F. App'x 748, 749 (10th Cir. 2006) (declining to rule on the application of the Rooker-Feldman doctrine because "the New Mexico case had not come to a final judgment") (unpublished); *Kirby v. Guardian Life Ins. Co. of Am. (Kirby II)*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124 (stating that in order to assert claim preclusion a party must first establish there was a final judgment in the earlier action); *Ullrich v. Blanchard*, 2007-NMCA-145, ¶ 19, 142 N.M. 835, 839 (stating that for issue preclusion to apply four elements including "the issue was necessarily determined" must be satisfied) (quoting *City of Sunland Park v. Macias*, 2003-NMCA-098, ¶ 10, 134 N.M. 216, 220 (internal quotation marks omitted).

Here, the state court litigation Defendants rely on has not achieved a final judgment. Specifically, Plaintiffs are still awaiting approval of their writ of certiorari, No. A-1-CA-37727, by the New Mexico Supreme Court. (Doc. 145 at 2); (Doc. 151-1). Therefore, the Court declines to rule on Defendants' arguments in favor of application of the Rooker-Feldman Doctrine, claim preclusion, and issue preclusion.

### b. *Plaintiffs' Motion for Issue Preclusion*

In their *Motion For Issue Preclusion*, Plaintiffs recite a long list of "issues" which they assert Defendants should be foreclosed from arguing based on issue preclusion. (Doc. 132 at 1-14). In their motion, Plaintiffs fail to provide any record citations or legal authority in support of their factual recitation. (Doc. 132); *see* (Doc. 143 at 2) (arguing Plaintiffs' *Motion For Issue Preclusion* "makes no attempt whatsoever to create a record on which the Court could evaluate the issue presented."). Additionally, Defendants note that under New Mexico law, the party asserting issue preclusion must show that the adversely affected party was a party to the prior litigation. *Id.* at 4. Specifically, Defendants assert the adversely affected parties in this case, Defendants Becker and Valderaz, were not parties to the underlying state case. *Id.* at 7. Thus, Defendants argue Plaintiffs' *Motion For Issue Preclusion* fails on the first element. *Id.*

Under New Mexico law, parties asserting issue preclusion must demonstrate four elements: "(1) the parties in the current action were the same or in privity with the parties in the prior action, (2) the subject matter of the two actions is different, (3) the ultimate fact or issue was actually litigated, and (4) the issue was necessarily determined." *City of Sunland Park*, 2003-NMCA-098, ¶ 10. The same issue of finality that plagued Defendants' arguments applies here: the underlying state litigation is not

16

final given Plaintiffs' pending writ of certiorari, No. A-1-CA-37727. (Doc. 145 at 2); (Doc. 151-1). Therefore, like Defendants, Plaintiffs also fail to fulfill the fourth requirement— "the issue was necessarily determined." *City of Sunland Park*, 2003-NMCA-098, ¶ 10.

In addition, Plaintiffs fail to meet the first requirement—the parties in the current action are the same or were in privity with the parties in the prior action. Here, Defendants Becker and Valderaz were not parties to the underlying state action. *Supra*, Section III. Additionally, they were not in privity with CYFD in the prior action. See *Deflon v. Sawyers*, 2006-NMSC-025, ¶ 4, 139 N.M. 637, 640, *as corrected* (June 29, 2006) ("[P]rivity does not exist where an initial lawsuit is brought against an employer and a second lawsuit is then brought against an employee acting in his or her individual capacity.") (citing *Morgan v. City of Rawlins*, 792 F.2d 975, 980 (10th Cir.1986)).

Accordingly, because the underlying state action is still pending, and because Defendants Becker and Valderaz were not parties or in privity with CYFD in the underlying state action, the Court **RECOMMENDS** that Plaintiffs' *Motion For Claim Preclusion*, (Doc. 132), be **DENIED**.

### c. *Qualified Immunity*

Next, Defendants argue both Defendants Becker and Valderaz are entitled to summary judgment based on qualified immunity. Specifically, Defendants contend there was no clearly established law that would have put them on notice that their actions were unlawful. (Doc. 144 at 21-22). In their Response, Plaintiffs assert that Defendant Becker violated the clearly established law on the right to family association, procedural due process, and the Fourth Amendment right to be free of unlawful search and seizure. (Doc. 145 at 1); (Doc. 146 at 3-5). Notably, in their Response, Plaintiffs fail to discuss

any conduct taken by Defendant Valderaz that violated their constitutional rights. (Doc. 145); (Doc. 146). Plaintiffs nonetheless assert that an award of qualified immunity is inappropriate for both Defendants Becker and Valderaz.

Under Section 1983, state officials sued in their individual capacity for damages may raise the affirmative defense of qualified immunity. *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016). Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "Qualified immunity also shields [officials] who have 'reasonable, but mistaken beliefs,' and operates to protect [officials] from the sometimes 'hazy border[s]' of the law." *Valdez v. Roybal*, 186 F. Supp. 3d 1197, 1251 (D.N.M. 2016) (quoting *Saucier v. Katz*, 533 U.S. 194, 205 (2001)) (alterations made).

Once a defendant asserts qualified immunity, the plaintiff bears the burden of demonstrating that both (1) the official violated a federal constitutional or statutory right; and (2) the right violated was clearly established at the time of the official's conduct. *T.D. v. Patton*, 868 F.3d 1209, 1219 (10th Cir. 2017). The Tenth Circuit has described this test as a "heavy two-part burden," established to protect "all but the plainly incompetent or those who knowingly violate the law." *Holmes,* 830 F.3d at 1134 (internal citations and quotations omitted). A court has discretion to address the requirements of a qualified immunity defense in any order. *Pearson*, 555 U.S. at 236. The plaintiff's failure to establish either of the two requirements is fatal to his claim. *Id.*

In determining whether the plaintiff has satisfied the two-pronged qualified-

immunity showing, the court ordinarily accepts the plaintiff's version of the facts. *See Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). However, because the summary judgment stage is "beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "As with any motion for summary judgment, '[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts.'" *York v. City of Las Cruces*, 523 F.3d 1205, 1210 (10th Cir. 2008) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). However, if the non-movant proves there is a factual dispute involving an issue "on which qualified immunity turns," summary judgment on the basis of qualified immunity is "inappropriate." *Harapat*, 676 F. Supp. 2d at 1266 (citing *Poe v. Haydon*, 853 F.2d 418, 426 (6th Cir. 1988)).

### i. The Right to Familial Association

In Defendants' Motion, they contend Defendants Becker and Valderaz are entitled to qualified immunity on Plaintiffs' familial association claim. (Doc. 144 at 20-22). Specifically, Defendants assert there was no clearly established right at the time S.E. Girl and S.E. Boy were removed from Plaintiffs' home that would have put Defendants Becker and Valderaz on notice that their actions were unlawful. *Id.* at 22. In their Second Amended Complaint, Plaintiffs allege Defendants Becker and Valderaz violated Plaintiffs' right to familial association based on the following: (1) they failed to reunify Plaintiffs with their children in a timely manner and without just cause; (2) they did not affirmatively protect the familial relationship between Plaintiffs and their children; and (3) they intentionally and knowingly directed conduct adverse to the family

relationship. (Doc. 109 at 22, ¶¶ 121-124). The Court will address each of Plaintiffs' arguments in turn.

The right to familial association has long been recognized as a substantive due process right, arising from the freedom of intimate association. *Griffin v. Strong*, 983 F.2d 1544, 1547 (10th Cir. 1993). The Tenth Circuit has found that "[t]he government's 'forced separation of parent from child, even for a short time, represents a serious impingement' on a parent's right to familial association." *Thomas v. Kaven*, 765 F.3d 1183, 1195 (10th Cir. 2014) (quoting *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010)). However, the right is not absolute and "must be weighed against the state's interest in protecting a child's health and safety in order to determine whether state actors unduly burdened that right in a given case." *Thomas*, 765 F.3d at 1196.

In the Tenth Circuit, a court must consider if the right was sufficiently clear so that a reasonable government employee in the defendant's shoes would understand that what she did violated that right. *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). Ordinarily, to prove a clearly established right, "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point or to the clearly established weight of authority from other courts that have found the law to be as the plaintiff maintains." *Callahan v. United Gov't of Wyandotte Ctv.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (internal citations omitted). Yet, the Tenth Circuit has also found that "does not mean that we must have previously decided a case that is materially factually similar or identical to the present case; instead, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Jensen*, 603 F.3d at 1197 (quoting *Anderson v. Creighton*, 483 U.S.

20

635, 640 (1987)). Accordingly, the assessment of whether the right has been clearly established "depends substantially upon the level of generality at which the relevant legal rule is to be identified." *Anderson*, 483 U.S. at 639 (internal quotation marks omitted).

In assessing the level of specificity required, the Tenth Circuit has applied a sliding scale to determine when the law is clearly established. *See Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) ("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."). Furthermore, "general statements of the law are not inherently incapable of giving fair and clear warning ...." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). In fact, the United States Supreme Court recently reaffirmed "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (quoting *Anderson*, 483 U.S. at 640). "The question is not whether a 'broad general proposition' was clearly established," but "'whether the violative nature of particular conduct [was] clearly established.'" *Halley v. Huckaby*, 902 F.3d 1136, 1144 (10th Cir. 2018) (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir.2018)). "Otherwise, 'plaintiffs would be able to convert the rule of qualified immunity into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'" *White*, 137 S. Ct. at 552 (quoting *Anderson*, 483 U.S. at 639).

Here, Plaintiffs cite to several cases that stand for the general proposition that familial association is a recognized substantive due process right. (Doc. 146 at 4-5) (citing *Jensen*, 603 F.3d at 1196-1197; *Thomas*, 765 F.3d. at 1183; *Malik v. Arapahoe*

*Cnty. Dep't of Soc. Servs.*, 191 F. 3d 1306, 1314 (10th Cir. 1999)). For example, in *Malik* the Tenth Circuit upheld the district court's denial of qualified immunity where there was a genuine issue of material fact concerning whether the defendant police officer collaborated with the defendant social worker in procuring a judicial ex parte order, which allowed for temporary custody of the plaintiff's child, based on omissions and misrepresentations. *Malik*, 191 F.3d at 1313-14. The Tenth Circuit stated "it was clearly established law that [a] government officials' procurement through distortion, misrepresentation and omission…of a court order to seize a child is a violation of the Fourth Amendment." *Id.* at 1316 (quoting *Malik v. Arapahoe Cty. Dep't of Soc. Servs.*, 987 F. Supp. 868, 882 (D. Colo. 1997)) (internal citations omitted).

Similarly, in *Jensen*, the Tenth Circuit held that parents did not have a clearly established constitutional right to direct a child's medical care; they denied the plaintiffs' procedural due process claims because the defendant's allegedly false testimony did not have a "degenerative effect" on the court proceedings; and they found the plaintiffs failed to show the defendants imposed an undue burden on their parent-child relationship. As a result, the Tenth Circuit concluded the plaintiffs failed to show the defendants violated their associational rights. 603 F.3d 1182, 1197-1201 (10th Cir. 2010).

The other cases cited by Plaintiffs suffer from the same deficiencies, as they too fail to put a reasonable official in Defendants' position on notice that her actions constitute a constitutional violation. *See, e.g., Thomas*, 765 F.3d at 1197 (finding dismissal of the plaintiff's claim for inference with familial association improper where the plaintiff had pled sufficient facts alleging the treating physicians' requested medical

hold based on plaintiffs' daughter's expression of suicidal thoughts was insufficiently emergent); *Zane v. Kramer*, 195 F. Supp. 3d 1243, 1255-56 (W.D. Okla. 2016), *subsequently aff'd sub nom. Hedger v. Kramer*, 726 F. App'x 677, 684-85 (10th Cir. 2018) (unpublished) (affirming the district court's holding that there was adequate reasonable suspicion to justify seizure of the plaintiffs' older child based on the presence of significant physical injuries and later death of the plaintiffs' younger child, despite the defendant case worker's failure to inform the court that physicians did not believe the plaintiffs had inflicted harm on the younger child).

Indeed, several of the Tenth Circuit cases cited by Plaintiffs have no factual similarities to this case. *See Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1029-30 (10th Cir. 2015) (finding qualified immunity applicable to defendant police officers where there was no clearly established law against arresting an entire unit under the circumstances of the case); *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001) (holding the decision to deploy the SWAT team was not an unreasonable seizure, and the leader of the SWAT team was not entitled to qualified immunity for alleged excessive force or for alleged violation of the knock-and-announce rule and for use of foul and abusive language).

Plaintiffs have not asserted a constitutional right to direct their children's medical care; there is no evidence that Defendants Becker or Valderaz provided intentionally false testimony at any of the court proceedings; and the parties do not appear to contest whether the removal of Plaintiffs' children constituted an undue burden. As a result, none of the cases cited by Plaintiffs provide the level of specificity required of the circumstances, nor do they support their particularized allegations. *See White*, 137 S.

Ct. at 552 ("clearly established law must be 'particularized' to the facts of the case.")

(quoting *Anderson*, 483 U.S. at 640). Indeed, the cases Plaintiffs rely on fail to

demonstrate with sufficient clarity that a reasonable official in Defendants' position

would understand that she had an affirmative duty to protect the familial relationship and

reunify in a timely manner under the circumstances presented in this case.

In addition, Plaintiffs have failed to present any factual evidence from the record

to substantiate their allegation that Defendants intentionally directed conduct to damage

the familial relationship. *See Harvey Barnett Inc.*, 338 F.3d at 1129 (in summary

judgment a non-moving party cannot rest on ignorance of the facts, speculation, or

unsubstantiated conclusory allegations). While Defendant Becker admitted she bore

some responsibility for the timeliness of proceedings, Plaintiffs have not provided

evidence that Defendants Becker or Valderaz committed perjury or intentionally delayed

proceedings for the sole intent of disrupting the parent-child relationship.

In conclusion, while Plaintiffs have pointed to law that generally protects the right

to familial association, they have failed to provide "clearly established law…

particularized to the facts of [this] case." *White*, 137 S. Ct. at 552 (2017) (internal

citations and quotation marks omitted) (alterations made). Even considering the facts in

the light most favorable to Plaintiffs, this Court cannot find it is clearly established law

that unintentional passivity on the part of a government official's response to child

custody proceedings constitutes a violation of the right to familial association.

Furthermore, Plaintiffs have not provided a Supreme Court or Tenth Circuit decision that

supports this proposition. *Callahan,* 806 F.3d at 1027 (to prove a clearly established

right, "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point or to

the clearly established weight of authority from other courts that have found the law to be as the plaintiff maintains.") (internal citations omitted). Simply put, while Defendant Becker may not have made a full-throated effort on every occasion to expediate S.E. Girl's custody case, this inaction does not fulfil the high burden on Plaintiffs to show a clearly established right.

As such, the Court finds Plaintiffs failed to provide clearly established law to support their claim that Defendants violated their right to familial association. For these reasons, the Court **RECOMMENDS** that summary judgment for Defendants be **GRANTED** on Plaintiffs' substantive due process claims.

### ii. The Right to Procedural Due Process

Next, Defendants argue they are entitled to qualified immunity on Plaintiffs' procedural due process claims. Specifically, Defendants contend Plaintiffs failed to "articulate what specific actions Defendant Becker and Defendant Valderaz took that violated their federal constitutional or statutory rights." (Doc. 152 at 10). In effect, they assert Plaintiffs have failed to fulfill the requirements of the first prong of qualified immunity: Defendants violated Plaintiffs' procedural due process rights. (Doc. 152 at 9-10). In their Second Amended Complaint, Plaintiffs allege Defendants violated their procedural due process rights with the following four actions and inactions: (1) Plaintiffs were not afforded timely hearings by CYFD; (2) Defendant Becker failed to prevent long periods of absence between Plaintiffs and their children as required by the New Mexico Children's Code; (3) Plaintiffs were not afforded timely and workable reunification plans to prevent long periods of absence with their children as required by the New Mexico Children's Code; and (4) Plaintiffs completed all treatment plans for reunification but

CYFD and Defendant Becker continued to prevent Plaintiffs from visiting their children. (Doc. 109 at 21, ¶¶ 114-116, 118, 119). The Court will evaluate each of Defendants' alleged procedural due process violations in turn, evaluating whether each violation is sufficiently supported to overcome the defense of qualified immunity.

"Under the Fourteenth Amendment to the United States Constitution, parents have a protected liberty interest in the care, custody and control of their children." *Gomes v. Wood*, 451 F.3d 1122, 1127 (10th Cir. 2006) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000)). "As a result, state officials may not remove children from the home, through either temporary seizures or the permanent termination of parental rights, without providing due process of law." *Id.* at 1127 (citing *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982)). Yet, parents' liberty interest is not absolute, as states have an "interest in preserving and promoting children's welfare…including a traditional and transcendent interest" in protecting children from abuse. *Id.* at 1127-1128 (internal citations and quotation marks omitted).

Consequently, when a state seeks to remove a child from his or her parents' custody, due process requires that the parents receive prior notice and a hearing. *Id.* (citing *Spielman v. Hildebrand*, 873 F.2d 1377, 1385 (10th Cir.1989)). "Although the exact procedures required by the Constitution depend on the circumstances of a given case, '[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Jensen*, 603 F.3d at 1200 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)) (internal quotation marks and brackets omitted). In addition, to overcome a qualified immunity defense asserted in response to a procedural due process claim, "a plaintiff must show that the defendant was more

than simply negligent." *Brown v. Montoya*, 662 F.3d 1152, 1170 (10th Cir. 2011) (citing *Daniels v. Williams*, 474 U.S. 327, 333-36 (1986)) (suggesting that the court would require more than simple negligence but declining to resolve which particular state of mind is required for a procedural due process violation).

First, Plaintiffs contend their procedural due process rights were violated by Defendants' failure to provide them timely hearings, depriving them of a meaningful opportunity to be heard. While Plaintiffs' briefing does not highlight specific actions taken by Defendants Becker or Valderaz in support of their argument, at Defendant Becker's deposition Plaintiffs' counsel questioned her about the three years it took for CYFD to respond to Plaintiffs' motion for summary judgment in the state district court. (Doc. 146-6 at 4, deposition pages 49-50). In response, Defendant Becker stated she could not explain the delay because "as far as legal…that was done by our attorneys, and I am not an attorney." *Id.*

However, during this three-year time period when Plaintiffs waited for CYFD's response, the state district court continued to convene numerous hearings. *See supra*, Section III; (Doc. 143-1, State Court Docket Sheet, at 14-19). During these hearings, Plaintiffs could have addressed CYFD's failure to respond to their motion for summary judgment, or complained the delays were violating their constitutional right to be heard. In light of Plaintiffs' failure to provide any evidence of specific actions, or inactions, taken by Defendants Becker or Valderaz that denied them a meaningful opportunity to be heard, and given the state district court's numerous hearings, the Court finds the allegation that Plaintiffs were deprived of their procedural due process rights unpersuasive.

Second, Plaintiffs contend Defendant Becker failed to prevent long periods of absence between themselves and their children, violating their right to procedural due process. In support of this allegation, Plaintiffs cite to Defendant Becker's testimony, where she admitted "she thought CYFD was partly at fault for the disintegration because of how long everything took." *Donna E. I*, 2017-NMCA-088, ¶ 44. In viewing the facts in the light most favorable to Plaintiffs, Defendant Becker's testimony indicates that she attributed some fault to her own inaction. However, absent any further allegation of misconduct, simple negligence or passivity is insufficient to defeat qualified immunity on a procedural due process claim. *See Brown*, 662 F.3d at 1170.

Next, Plaintiffs allege Defendants violated their procedural due process rights by failing to provide and honor timely and workable reunification plans. Plaintiffs have not provided evidence indicating Defendant Becker or Defendant Valderaz were responsible for providing Plaintiffs their specific therapy requirements and reunification plans. More pointedly, Plaintiffs have not cited to a section in the New Mexico Children's Code which endows Defendant Becker and Defendant Valderaz with the affirmative duty to notify Plaintiffs of these requirements. To the contrary, the Court of Appeals noted that a court appointed mediator—Mr. Woodridge—was responsible for the tasks of "controlling the various aspects of family therapy intervention including…parent and child visitation," a responsibility which he "completely failed." *Donna E. I*, 2017-NMCA-088, ¶ 61.

Even assuming it was Defendants Becker and Valderaz's responsibility to ensure Plaintiffs understood their therapy goals and the areas they needed to address in order to be reunited with their children, Plaintiffs have not proven this inaction amounted to

anything more than negligence. Again, Defendants' purported negligence in these tasks is insufficient to constitute a violation of procedural due process. *See Daniels*, 474 U.S. at 333-36. As such, Plaintiffs' assertion that Defendants' inaction amounted to a procedural due process violation is unsupported.

In short, Plaintiffs have not provided evidence that Defendants intentionally violated their procedural due process rights. Even when viewing the facts in the light most favorable to Plaintiffs, that inaction and delay occurred in the state court proceedings and therapy requirements were unclear, simple negligence is insufficient to establish a violation of Plaintiffs' procedural due process rights. Accordingly, the Court **RECOMMENDS** summary judgment be **GRANTED** for Defendants on Plaintiffs' procedural due process claims.

### iii. The Fourth Amendment Right to be Free from Unlawful Seizure

Next, Defendants allege Plaintiffs failed to articulate or point to any evidence showing what individual actions Defendants Becker or Valderaz took that violated their federal constitutional rights. (Doc. 152 at 10). In their Second Amended Complaint, Plaintiffs allege Defendants violated their Fourth Amendment protections against unlawful search and seizure[2] with the followings acts: Defendants Becker and Valerdaz seized Plaintiffs' children, revoked their reunification plan, prevented any type of familial relationship, and have maintained custody of Plaintiffs' children based on false assumptions Plaintiffs had pornography on their computer and were showing

---

2.     Within this section of their Complaint, Plaintiffs also assert a number of due process violations. These assertions are recitations of Plaintiffs prior procedural and substantive due process allegations, and as such, they have been addressed in the previous sections. *Supra*, Section (IV)(c)(i)-(ii).

pornography to their children. (Doc. 109 at 23-25, ¶¶ 130-131). Further, Plaintiffs allege Defendants Becker and Valderaz knew that "at the time of termination of the reunification plan in 2011…the only finding against [Plaintiffs] was failure to supervise and protect the minor Children from [Harley Jr.]," and they knew that Harley Jr. "posed no threat to the minor Children as he was incarcerated or resided in [Ohio]." (Doc. 109 at 25, ¶¶ 137-138).

The Fourth Amendment protects persons from "unreasonable ... seizures." U.S. Const. Amend. IV. "'The key principle of the Fourth Amendment is reasonableness....' " *Halley v. Florida v. Royer*, 460 U.S. 491, 514 (1983) (quoting *Michigan v. Summers*, 452 U.S. 692, 700, n.12 (1981)) (internal brackets omitted). Even in the context of child custody, "a seizure must be supported by an arrest warrant, probable cause, or reasonable suspicion to detain and question an individual." *Halley v. Huckaby*, 902 F.3d 1136, 1145 (10th Cir. 2018) (internal citations omitted). In custody cases in which the Tenth Circuit found a Fourth Amendment seizure violation, the seizure was performed without a court order or sufficiently exigent circumstances, or the court order was obtained by the defendants' misrepresentation of facts. *See, e.g., Malik*, 191 F.3d at 1316 (it was clearly established that officers violated the Fourth Amendment by misrepresenting facts in order to obtain judicial authorization to seize the child); *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1244 (10th Cir. 2003) (holding the defendant social workers violated the Fourth Amendment when they seized a child from his home without judicial authorization or exigent circumstances).

Contrary to other cases in which a Fourth Amendment seizure was found, in this case the revocation of the reunification plan and seizure of S.E. Girl was done pursuant

to a court order. *Donna E. I*, 2017-NMCA-088, ¶ 16-20. The initial court order was based on testimony from a Hobbs Police officer that images on Plaintiffs' computer may have been child pornography. *Id.* ¶ 17. While Plaintiffs describe this as "false assumptions and innuendo," the state district court had no reason to question the veracity of the police officer's testimony or the very real possibility the images were child pornography. In addition to the Hobbs police officer's testimony, there was previously considered evidence from S.E. Boy's sexual assault examine in which S.E. Boy indicated his parents took pictures of his "private parts." District Court's 2018 Findings and Conclusions (Doc. 144-1, at 7, ¶¶ (II)(A)(iii)(7)).

While a 2012 report from the Hobbs Police Department indicated the images could not conclusively be identified as child pornography, the state district court did not have this information available at the time of its 2011 order. *Donna E. I*, 2017-NMCA-088, ¶ 25. Furthermore, there is no evidence that testimony provided at the July 2011 hearing was false or untruthful, and Plaintiffs have not put forth evidence that Defendants Becker or Valerdaz presented false or inaccurate information at this hearing. In short, this Court has no reason to question the reasonableness of the July 2011 court order revoking Plaintiffs' contact rights with S.E. Girl or revoking their reunification plan. From the record, the July 2011 order seems well supported by the evidence that was before the state court judge at the time.

Even after the initial July 2011 court order, Plaintiffs' children continued to be held in CYFD's custody pursuant to court orders. This Court has no reason to question the reasonableness of the subsequent court orders, as they appear to be generally supported by the testimony of therapists, psychologists, social workers, and others who

encountered Plaintiffs or their children. *See Donna E. I*, 2017-NMCA-088, ¶¶ 11-50;

(District Court's 2018 Findings and Conclusions, Doc. 144-1). Furthermore, Plaintiffs

have put forth no evidence that Defendants Becker or Valerdaz presented false or

inaccurate information at any of the subsequent hearings. Accordingly, the Court

**RECOMMENDS** that summary judgment for Defendants be **GRANTED** on Plaintiffs'

Fourth Amendment claims.

### d. Claims Against CYFD

Finally, Defendants argue CYFD should be granted summary judgment because

Plaintiffs failed to establish a "policy or custom" that caused the alleged constitutional

deprivation. (Doc. 144 at 22-23). In response, Plaintiffs contend "the official policy or

custom over the ten[-]year period of withholding [Plaintiffs' children] from the Parents

shows that the government[']s inaction was a result of deliberate indifference." (Doc.

146 at 5). In their Reply, Defendants again reiterate that Plaintiffs failed to demonstrate

any underlying constitutional violation, a custom or policy, or a causal connection

between the alleged wrongdoing and CYFD's policy. (Doc. 152 at 12). As a result,

Defendants request the Court grant summary judgment for CYFD on Plaintiffs' Section

1983 claims. *Id.*

For a municipality to be held liable under Section 1983, the plaintiff bears the

burden of establishing: "1) the existence of a municipal policy or custom and 2) a direct

causal link between the policy or custom and the injury alleged." *Graves v. Thomas*, 450

F.3d 1215, 1218 (10th Cir. 2006). When the plaintiff alleges the municipality's conduct

arises from inaction or "a failure to act," the plaintiff must demonstrate "the municipality's

inaction was the result of deliberate indifference to the rights of its inhabitants." *Id.*

(internal quotations omitted). In addition, a "municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Id.*

Here, Plaintiffs' claims against CYFD fail because the Court has already recommended that no underlying constitutional violation be found against CYFD employees Defendants Becker and Valderaz. *See* (*Supra,* Section IV(c)(i)-(iii)). In addition, Plaintiffs have presented no evidence that any other CYFD employee committed a constitutional violation. Notwithstanding this recommendation, Plaintiffs' claims are further plagued by the lack of evidence supporting a "custom or policy" for which CYFD may be held responsible. Indeed, Plaintiffs contend the withholding of their children resulted in the creation of a custom or policy, which demonstrates "deliberate indifference." (Doc. 146 at 5). In support of their one-paragraph argument that CYFD is not entitled to summary judgment, Plaintiffs' rely on a single case: *Martinez v. Uphoff*, 265 F.3d 1130 (10th Cir. 2001).

In *Martinez*, the Tenth Circuit affirmed the district court's order granting qualified immunity for the defendants, the director and other official personnel employed by the Department of Corrections. *Id.* at 1135. Specifically, *Martinez* involved the death of a prison guard by three inmates who attempted to escape. *Id.* at 1132. In denying the plaintiff's substantive due process claim, the Tenth Circuit found "[the] plaintiff failed to provide facts which would tie the institutional deficiencies at the prison to the death of [the decedent]." *Id.* at 1135. The Tenth Circuit further opined that "inaction in the face of known dangers or risks was not enough to satisfy the danger-creation theory's conscience shocking standard." *Id.* (internal quotations omitted).

It is unclear from Plaintiffs' briefing the exact contours in which they hope to use *Martinez* as persuasive or binding authority in the present case. Neither *Martinez*, nor the bald assertions Plaintiffs make in their briefing, can be understood as demonstrating "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989); *Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) (affirming summary judgment for the municipal defendant because although the plaintiff demonstrated "few incidents of discrimination … [the plaintiff] failed to establish a genuine dispute of material fact about whether the [municipal defendant] had a custom of discriminatory employment practices."). Absent a policy or custom for the Court to evaluate, or an alleged causal connection, the Court **RECOMMENDS** that Defendant CYFD be **GRANTED** summary judgment on Plaintiffs' Section 1983 claims.

## V.    Conclusion

Consistent with the foregoing, the Court **RECOMMENDS** that Plaintiffs' *Motion For Issue Preclusion*, (Doc. 132), be **DENIED**, and Defendants' *Motion for Summary Judgment and Memorandum in Support*, (Doc. 144), be **GRANTED**.

<div style="border:1px solid">

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

</div>

_____
THE HONORABLE CARMEN E. GARZA
CHIEF UNITED STATES MAGISTRATE JUDGE